UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEANETTE INGRASSIA,

                Plaintiff,

       - against -

HEALTH & HOSPITAL CORP.,
CITY OF NEW YORK, and
ELMHURST HOSPITAL,

              Defendants.
-------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 14 CV 1900 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Jeanette Ingrassia brings this employment discrimination action against Defendants Health & Hospital Corporation ("HHC"), the City of New York, and Elmhurst Hospital. Plaintiff alleges that Defendants discriminated against her on the basis of age and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. § 621 *et seq.* Defendants now move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(5) and 12(b)(6). The Court grants Defendants' motion in part and denies it in part. Defendants Elmhurst Hospital and the City of New York are dismissed from this action. Count One of the Complaint is dismissed for failure to state a claim, but the remainder of Plaintiff's claims shall proceed.

# I.    BACKGROUND

## A.    Factual Allegations[1]

Plaintiff worked for HHC for a total of 23 years.[2]  (Complaint ("Compl."), Dkt. 1, at ECF 8).[3]  She alleges that she was forced to retire on or about January 2012, (Compl. at ECF 1), due to the discrimination and sexual harassment she suffered from her supervisors at HHC.  (*Id.* at ECF 6 (stating that, as a result of the treatment from her supervisors, Plaintiff was "upset [] to the point that she had to quit").

One of Plaintiff's supervisors, Eric Morales, made comments that "he did not like women and that they were only good for sex," and that he would "donat[e] the older women [employees] to a different department because he had no use for them."  (Compl. at ECF 5).  Her subsequent supervisor, Kevin Schwendemann, "continued and increased the same type of insulting behavior."  (*Id.*).  He would comment that "she could not keep up with the girls" and that she was "the oldest woman."  (*Id.*).  He would question when Plaintiff planned to retire, would stand over her and ask whether he was making her nervous, and make other insulting, derogatory comments.  (*Id.*).  Though Plaintiff told him repeatedly that she was uncomfortable with these comments and that the comments constituted age discrimination, Schwendemann allegedly continued and even increased his comments.  (*Id.*).

---

[1]    The Court takes the allegations in the Complaint as true, as it must on a motion to dismiss under FRCP 12.  *See EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014) ("[W]e accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.").

[2]    The Complaint does not allege Plaintiff's exact position, but the Court infers from the Complaint that Plaintiff worked in an administrative role.

[3]    Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.  The Court notes that Plaintiff's Complaint fails to comply with FRCP 10(b), which requires a party to "state its claims or defenses in numbered paragraphs[.]"  Fed. R. Civ. P. 10(b).

Schwendemann also engaged in sexually harassing conduct by frequently coming within a foot of Plaintiff and grabbing himself in the groin so that Plaintiff could see. (*Id*. at ECF 6). In addition, Schwendemann invaded Plaintiff's privacy and harassed her by reading her medical records. (*Id*. at ECF 7). Plaintiff continued to receive raises and favorable performance reviews while enduring her supervisors' harassment. (*Id*. at ECF 5).

Plaintiff complained to Schwendemann about his conduct and also wrote to her union representative to complain about Schwendemann. When Schwendemann found out about her complaint to the union, he retaliated against her by yelling at her in front of other employees and by docking her pay when she was only a few minutes late getting to work. Schwendemann also tapped Plaintiff's phone to listen to her conversations, and would yell at her for no apparent reason. (*Id*.). Schwendemann did not do this to younger similarly situated employees—only older ones. (*Id*. at 7). On several occasions, Plaintiff returned to work from vacation to find her desk and belongings moved so that she was facing the wall, as if she was being punished. (*Id*. at ECF 8).

Plaintiff has suffered, and continues to suffer, emotional and financial distress as a result of her supervisors' harassment.

### B.  Procedural History

Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC")[4], and received a right-to-sue letter on January 25, 2013. She timely filed suit on March 15, 2013 in the U.S. District Court for the District of New Jersey. (Compl.). On August 23, 2013, Defendants filed a motion to dismiss the Complaint pursuant to FRCP Rule 12(b)(3), 12(b)(5) and 12(b)(6), or, in the alternative, to transfer the action for improper venue to the

---

[4]    Plaintiff does not specify the date on which she filed her EEOC charge.

EDNY. (Dkt. 6). U.S. District Court Judge Michael A. Shipp held a telephone conference on March 19, 2014, reading into the record an opinion and order denying Defendants' Motion to Dismiss, but granting the motion to transfer venue. (Dkt. 10). An order consistent with that opinion was issued (Dkt. 11), and the case was transferred to this Court on March 25, 2014.

On September 25, 2014, Defendants moved to dismiss the Complaint under FRCP 12(b)(5) (insufficient service of process) and FRCP 12(b)(6) (failure to state a claim upon which relief can be granted). (Dkt. 24).

## II.     STANDARD OF REVIEW

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The liberal notice pleading standard of FRCP 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 570. Under FRCP 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* A complaint must contain enough factual material to "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570), and should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. That "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . is not the test." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (citing *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).

Generally, on a motion to dismiss, the Court is constrained to the "four corners" of the complaint. *Gorfinkel v. Vayntrub*, No. 11–CV–5802, 2014 WL 4175914, at *3 (E.D.N.Y. Aug.

20, 2014) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir. 1998)).  The Court may consider documents outside of the complaint, however, if the plaintiff relied on them to frame her pleading.  *Martin v. County of Nassau*, 692 F. Supp. 2d 282, 289 (E.D.N.Y. 2010).  Here, Plaintiff has attached to her Opposition a transcript of her 50-h hearing[5] before the City.  (*See* Dkt. 22–5, *In the Matter of the Claim of Jeanette Ingrassia against the City of New York*, 50-h Hearing Transcript (Jun. 19, 2012)).  It is not readily apparent to the Court that Plaintiff relied on the transcript of her 50-h hearing in framing the Complaint.  Indeed, the Complaint does not even reference a notice of claim filed before the City or the fact that Plaintiff participated in a 50-h hearing.  Thus, the Court declines to consider the 50-h hearing transcript.  *See HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11 CV 5881, 2012 WL 4477552, at *7 (S.D.N.Y. Sept. 27, 2012) (declining to consider the 50-h transcripts attached by plaintiffs in opposition papers where "it [did] not appear that [p]laintiffs relied on the transcripts . . . in drafting the [complaint].").  The Court therefore does not consider the statement of facts included in Plaintiff's opposition memorandum, which relies entirely on the 50-h hearing transcript and does not cite to the Complaint.  (*See* Pl. Opp. at ECF 4–6).

## III.  DISCUSSION

### A.  Dismissal of Defendants Elmhurst Hospital and City of New York and Amendment of the Caption

Though the Complaint simply states that Plaintiff was employed by HHC (Compl. at ECF 8), Plaintiff also named Elmhurst Hospital and the City of New York as defendants in this action,

---

[5]  Under N.Y. Gen. Mun. Law § 50-h, upon the filing of a notice of claim against the City, the City has "the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made[.]"

(*see id.* at ECF 1).  Defendants seek the dismissal of Elmhurst Hospital and the City of New York as improper defendants.

Plaintiff concedes that the City of New York is not a proper defendant.  (Pl. Opp. at ECF 10).  The Court thus dismisses the City of New York based on Plaintiff's concession.

As explained by Defendants, HHC is a public benefit corporation.  N.Y. Unconsol. Laws §§ 7384(1), 7385(1), 7401.  Elmhurst is an operating division of HHC and not a separate corporate entity subject to suit.  *See Igartua v. Elmhurst Hosp. D-11 Psychiatric Ward*, No. 09 CV 3287, 2011 WL 1337494, at *1 n.1 (E.D.N.Y. Mar. 17, 2011), *report and recommendation adopted,* No. 09 CV 3287, 2011 WL 1337158 (E.D.N.Y. Apr. 7, 2011) (stating Elmhurst "is not a suable entity").  Because Elmhurst is not subject to suit and HHC is properly named in this action, the Court dismisses Elmhurst Hospital from this action.

Plaintiff seeks the amendment of the caption to replace "Health and Hospital Corp." with "The New York City Health and Hospital Corporation."  (Pl. Opp. at ECF 10).  Defendants do not oppose the request.  (Def. Reply at ECF 4).  The Court, therefore, directs the Clerk of the Court to amend the caption by removing the City of New York and Elmhurst Hospital as defendants, and by replacing "Health and Hospital Corp." with "The New York City Health and Hospital Corporation."[6]

## B.      Service of the Complaint

Defendant seeks dismissal of Plaintiff's Complaint pursuant to FRCP 12(b)(5) because Plaintiff did not serve HHC with a summons and complaint within 120 days of filing the complaint with the Court, as required by FRCP 4(m).  Fed. R. Civ. P. 4(m).  It is undisputed that Plaintiff did not serve HHC within the time allotted by FRCP 4(m).  Plaintiff commenced this

---

[6]      Because only HHC remains in this action, the Court will refer only to "Defendant" or "HHC" for the remainder of this opinion.

action on March 15, 2013, rendering the deadline for service as July 15, 2013 (the next business day after July 13, 2013, the 120th day, which fell on a Saturday). Plaintiff served HHC on August 7, 2013 (*see* Pl. Opp. at ECF 12; Dkt. 22–3, Affidavits of Service), *i.e.*, 24 days after the service deadline.

Under FRCP 4(m), where a plaintiff can show good cause for the failure to timely serve the complaint, the Court must extend the time for service. But even upon a plaintiff's failure to show good cause, the Court retains discretion to enlarge the 120-day period. *See* Fed. R. Civ. P. 4(m) Adv. Comm. Notes; *see also Zapata v. City of New York*, 502 F.3d 192, 196–97 (2d Cir. 2007) (holding that district courts have discretion to grant extensions of time to serve process even in the absence of good cause). In determining whether to enlarge the time for service despite the absence of good cause, the district court weighs the impact that dismissal or extension would have on the parties. *Zapata*, 502 F.3d at 197.

Plaintiff argues that good cause exists for her counsel's failure to serve the Complaint within the 120-day period. Plaintiff's counsel, Judith Amorski, attempted to effect timely service by serving the Complaint at Elmhurst Hospital on June 27, 2013; Plaintiff was advised, however, that service would not be accepted at that address. (Dkt. 22–2, Affidavit of Attempted Service 6/27/2013.[7] Ms. Amorski then states that she was unable to follow up with the process server in the three weeks following the first service attempt due to a family member's illness and eventual death. (Dkt. 22–1, Amorski Affidavit at ECF 1–2). When Ms. Amorski learned that the time for service had passed, she was in Florida and immediately directed the process server to serve Defendants. (*Id*. at ECF 2).

---

[7] The Court notes that Plaintiff's attorney's affidavit states that service was attempted in April 2013, which is plainly contradicted by the service affidavit filed in the docket. (*Compare* Dkt. 22–2, Affidavit of Attempted Service 6/27/2013 *with* Dkt. 22–1, Amorski Affidavit at ECF 1 (claiming attempt of service in April 2013)).

Defendant counters by arguing that Plaintiff's failure to timely serve the Complaint is not excused by good cause. First, Defendant argues that Ms. Amorski was on notice as early as June 27, 2013 that Defendants had not been properly served, and still had plenty of time before the expiration of the service deadline on July 15, 2013 to serve Defendants. Defendant argues that Ms. Amorski should not be excused from following up with the process server between June 27, 2013 and July 15, 2013, since there was ample time to do so. Second, Defendant points out that, contrary to Ms. Amorski's affidavit in support of Plaintiff's opposition, Ms. Amorski indicated in her August 12, 2013 letter transmitting proof of service to the District Court of New Jersey, that she had "just returned from a vacation and the proofs were in [her] mailbox[.]" She did not mention any illness or death in her family, as she represents to the Court now. (Dkt. 25–3, Kim Declaration, Ex. 3 at ECF 1). Third, Defendant points out that Ms. Amorski does not explicitly state that she was caring for her ill family member when service was due in July 2013, and notes that Ms. Amorski appeared before the District of New Jersey on July 17, 2013, two days after the service deadline. (Def. Reply at ECF 5).

Based on these contradictory facts, the Court cannot find that Plaintiff has shown "good cause" for Ms. Amorski's failure to timely serve the Complaint. Though Ms. Amorski may have experienced personal difficulties in July 2013, they do not excuse her from following up with the process server and seeking an extension of time from the Court to serve the Complaint. Rather, based on the facts set forth by the parties, it appears that Plaintiff's failure to timely serve the Complaint resulted from Ms. Amorski's "inadvertence, neglect, or mistake." *See Myers v. Sec'y of the Dep't of the Treasury*, 173 F.R.D. 44, 47 (E.D.N.Y. 1997) (holding that plaintiff's failure to timely serve the Complaint was due to attorney neglect, which does not qualify as good cause for an extension of time under FRCP 4(m)).

However, despite the absence of good cause, the Court will exercise its discretion to extend the time to complete service, rather than dismiss the case. In exercising its discretion in this manner, the Court balances the equities and finds that they favor Plaintiff. *See Myers*, 173 F.R.D. at 47 (considering the prejudice that dismissal of the complaint would pose to the plaintiff against the prejudice that late service had on the defendants, as well as other equitable factors). If the Court dismissed this action, Plaintiff would be time-barred from filing a new action, given that her EEOC Right-to-Sue letter is dated January 25, 2013 and afforded Plaintiff only 90 days to file suit. (*See* Compl. at ECF 12). Furthermore, Plaintiff's late service of the Complaint on HHC did not prejudice it in any way; HHC and the other Defendants clearly had notice of the action, based on Plaintiff's filing of a notice of claim against the City, her participation in a 50-h hearing on June 19, 2012, and Defendants' swift filing of a motion to dismiss three weeks after they were properly served. (*See* Dkt. 23–3, Notice of Claim (4/20/12); Dkt. 22–5, 50-h Hearing Transcript; Dkt. 6, Defendants' First Motion to Dismiss).

Thus, in light of the prejudice that Plaintiff would suffer upon the Court's dismissal of this action for failure to timely serve the Complaint, the Court exercises its discretion to extend the time for service of the Complaint on HHC to August 7, 2013, the date on which it was properly served. *See Czernicki v. Lieberman*, No. 01 CV 8360, 2003 WL 21056984, at *1 (E.D.N.Y. Feb. 28, 2003) (exercising discretion to extend the time for service where defendants had not been prejudiced by late service and in the absence of relief from the Court, plaintiff's claims would be time-barred); *Myers*, 173 F.R.D. at 47 (exercising discretion to extend the time for service given the prejudice that dismissal would pose to plaintiff).

### C.     Plaintiff's Title VII and ADEA Claims

#### 1.     Defining Plaintiff's Title VII and ADEA Claims

Though Plaintiff is represented by counsel, her Complaint is not a model of clarity.  The Complaint enumerates five counts but does not specify the legal theories under which Plaintiff seeks recovery, and two counts seem to assert overlapping theories of recovery.[8]  Plaintiff's Opposition to Defendant's motion clarifies that her causes of action include discrimination based on gender and age, hostile work environment in violation of Title VII and the ADEA, and retaliation in violation of Title VII and the ADEA.  (Pl. Opp. at ECF 16).  The Court thus construes Count One of the Complaint to set forth claims for age and gender discrimination under Title VII and the ADEA, Counts Two and Four to set forth claims for hostile work environment in violation of Title VII and the ADEA, and Count Three to set forth retaliation claims in violation of Title VII and ADEA. The Court also construes Plaintiff's Complaint to allege a claim for constructive discharge in violation of Title VII and the ADEA,[9] and notes that Count Five asserts a claim for *respondeat superior* liability.[10]

---

[8]     The Complaint generally alleges that it proceeds under "the laws of the United States." (Compl. at ECF 9).  The Civil Cover Sheet filed with the Complaint notes that Plaintiff asserts causes of action for age discrimination and harassment (*id*. at ECF 1), but the Complaint itself does not otherwise specify the legal theories of recovery.

[9]     Plaintiff's Complaint alleges, in an unenumerated section, that she was "forced to quit." (Compl. at ECF 9).

[10]     In setting forth her claim as to *respondeat superior* liability, Plaintiff alleges that the union responded to her complaint by stating "as long as your pay has not changed, you don't have a complaint."  (Compl. at ECF 9).  It is not clear to the Court whether Plaintiff therefore alleges that Defendant should be liable for the union's failure to act on her complaint.  Plaintiff has not named the union in this suit.  Defendant, however, has not moved to dismiss Count Five from the Complaint, except as part of its request that the entire complaint be dismissed for untimely service.

2.     Applicable Pleading Standard

In reviewing the allegations of Plaintiff's Complaint, the Court is mindful of the lowered standard of review applicable to discrimination complaints at the motion to dismiss stage. *EEOC v. Port Auth.*, 768 F.3d at 254 ("[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge[ ] [its] claims . . . across the line from conceivable to plausible to proceed.") (internal citations and quotations omitted) (citing *Swierkiewicz,* 534 U.S. at 510; *Iqbal,* 556 U.S. at 680). A plaintiff alleging employment discrimination thus may withstand a motion to dismiss without pleading each element of a *prima facie* case. *Vega v. Hempstead Union School Dist.*, No. 14-2265-cv, 2015 WL 5127519, at *9 (2d Cir. Sept. 2, 2015) ("a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss."). The Court may find the claim sufficient to comply with FRCP 8(a)(2) so long as it provides "a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).

In a pair of recent cases, the Second Circuit clarified the pleading standard applicable to employment discrimination claims pled under Title VII. "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, No. 14-1395-cv, 2015 WL 4604250, at *8 (2d Cir. Aug. 3, 2015); *see also Vega*, 2015 WL 5127519, at *12 ("At the pleadings stage, then,

a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or indirectly show discrimination by giving rise to a plausible inference of discrimination.").  The plaintiff's burden to plead discriminatory intent requires only that the Complaint give "plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 2015 WL 4604250 at *8.

In contrast to Title VII, the ADEA requires a plaintiff to allege that age was the "but for" cause of the employer's adverse action, not simply that it was a motivating factor.  *See Vega*, 2015 WL 5127519, at *11 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  Thus, the Court interprets *Vega* to require a plaintiff alleging an ADEA violation to plausibly allege that the employer took adverse action against her and that age was the "but for" cause in the employment decision.

### 3. Discrimination Based on Age and Gender

Plaintiff's Opposition asserts that her causes of action "include discrimination based on gender and age[.]"  (Pl. Opp. at ECF 16).  The Court determined above that it would construe Count One of the Complaint as asserting such claims pursuant to the ADEA and Title VII.  Defendant argues that Plaintiff's age and gender discrimination claims must be dismissed for Plaintiff's failure to plausibly allege that she suffered an adverse employment action.  (Def. Mem. at ECF 11–13).  The Court agrees.

For purposes of its Motion to Dismiss, Defendant does not dispute the notion that Plaintiff is a member of a protected class under Title VII and the ADEA.[11]  Notwithstanding the lowered pleading standard that applies here, for Plaintiff's age and gender discrimination claims

---

[11]     The Complaint does not specifically state Plaintiff's age, but implies that Plaintiff is close to retirement age, given her supervisor's alleged inquiries on when she would be retiring.

to survive a motion to dismiss, she must plausibly allege that she suffered some kind of adverse employment action. *See, e.g., Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of plaintiff's claim for gender discrimination where plaintiff failed to allege that she was subject to any specific gender-based adverse employment action). An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) (citing *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 85 (2d Cir. 2001)) (ADEA); *see also Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 641–42 (W.D.N.Y. 2014) (Title VII). It must be "more disruptive than a mere inconvenience or alteration of job responsibilities." *Dimitracopoulos*, 26 F. Supp. 3d at 213 (citing *Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004)); *Hughes*, 37 F. Supp. 3d at 641 (citing *Sanders*). Rather, a materially adverse change in employment can be plausibly alleged through allegations of termination, demotion evidenced through a decrease in wages or salary, a less distinguished title, a material loss of benefits, or significantly diminished substantive responsibilities. *See Vega*, 2015 WL 5127519, at *10 (citing *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003)).

While Plaintiff need not allege a *prima facie* case of age or gender discrimination, she must give fair notice of the grounds upon which her discrimination claim rests—meaning that she must allege, in a nonconclusory fashion, that she suffered an adverse employment action because of her age or gender. Here, the Court finds Plaintiff's Complaint falls short. Plaintiff's discrimination claims rest on her supervisors' comments about her age and gender, as well as general comments about older women. Such conduct, on its own, is insufficient to establish an adverse employment action for purposes of an ADEA or Title VII claim. *See Kurian*, 962 F.

Supp. 2d at 470 (noting "a supervisor's critical comments do not amount to an adverse employment action" (citing *King v. U.S. Sec. Assoc's, Inc.*, 11 CV 4457 , 2012 WL 4122025, at *8 (S.D.N.Y. Aug. 22, 2012), *report and recommendation adopted by* 2012 WL 4327396, at *1 (S.D.N.Y. Sept. 18, 2012)).  Nor does Plaintiff allege in her Complaint that she experienced any demotion,[12] reduction of pay, or reduction of job responsibilities because she was an older woman.[13]  Indeed, Count One of the Complaint specifically notes that "[d]espite the constant insults and comments [Plaintiff] continued to get raises and was given great reviews[.]"  (Compl. at ECF 5).

Plaintiff therefore fails to allege that she suffered an adverse employment action, requiring dismissal of her age and gender discrimination claims, even under the lowered pleading standard applicable to employment discrimination claims.  *See Patane*, 508 F.3d at 112 (affirming dismissal of plaintiff's Title VII discrimination claim for failure to provide a plain statement of the claim that would give defendant fair notice of the claim and the grounds upon which it rested, where plaintiff failed to allege that she was subject to a gender-based adverse

---

[12]     Plaintiff argues in her Opposition that she experienced an adverse employment action when she was demoted from her position.  (Pl. Opp. at ECF 20).  However, that allegation does not appear in the Complaint and thus cannot supply notice to Defendant of the grounds upon which her gender and age discrimination claims rest.  Moreover, as Defendant points out, Plaintiff's Opposition alleges that the change in duties happened in 2008, which is well outside the 300-day statutory period, rendering her claim untimely.  (Def. Reply at ECF 10); *Dimitracopoulos*, 26 F. Supp. 3d at 212 (noting that any discrete discriminatory and retaliatory actions that occurred more than 300 days before the plaintiff's filing of an EEOC charge are outside the scope of the ADEA's 300-day statute of limitations).

[13]     While Plaintiff's Complaint does allege that her supervisor docked her pay and that she was constructively discharged, Plaintiff characterizes such allegations as relevant to her claims for retaliation and hostile work environment.  (Pl. Opp. at ECF 20 ("Plaintiff suffered an adverse employment action when Defendants retaliated against Plaintiff."); Compl. at ECF 6–9).  Thus, the Court will consider such allegations within the context of those claims.  *See* Sections III.C.5, III.C.6; *see also Patane*, 508 F.3d at 112 (noting that the adverse employment actions alleged in the complaint were characterized by the plaintiff as retaliatory).

employment action); *Kurian*, 962 F. Supp. 2d at 470 (finding plaintiff failed to plausibly allege an ADEA claim where plaintiff was only subject to critical comments and did not allege that she suffered an adverse action affecting the terms and conditions of her employment). The Court thus dismisses Count One of the Complaint for failure to state a claim.

### 4.    Hostile Work Environment

Ignoring the lowered pleading standard applicable to Plaintiff's claim,[14] Defendant argues that Plaintiff's Complaint fails to plausibly allege a *prima facie* case of age and gender discrimination based on hostile work environment. (Def. Memo at ECF 14–16). In Counts Two and Four, Plaintiff alleges that two of her supervisors made discriminatory comments about women and Plaintiff's age, and that one of her supervisors frequently subjected her to sexual harassment by grabbing himself in the groin in Plaintiff's line of sight. (Compl. at ECF 5–6, 8).

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane*, 508 F.3d at 113 (citing *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). To avoid dismissal of a claim alleging hostile work environment, the plaintiff "need only plead facts to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse[.]'" *Id*. (citing *Terry,* 336 F.3d at 148).

---

[14]    Though the Second Circuit recently clarified the applicable standard in *Vega* and *Littlejohn*, it decided *Kassner* in 2007, thus providing notice to Defendant that Plaintiff "need not plead a *prima facie* case and may withstand a motion to dismiss by meeting a lesser standard." *See Kassner*, 496 F.3d at 238.

Similarly, to state a claim for hostile work environment in violation of the ADEA, the plaintiff must plausibly allege that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner*, 496 F.3d at 240 (citing *Brennan v. Metro Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). So long as the complaint provides a "short and plain statement of the claim . . . that gives the defendant fair notice of [the plaintiff's] claim for hostile work environment," the plaintiff's ADEA claim for hostile work environment will survive a 12(b)(6) motion to dismiss. *Id.* (citing *Swierkiewicz*, 534 U.S. at 512).

Applying these standards, the Court finds that Plaintiff has plausibly alleged a claim for hostile work environment in violation of both Title VII and the ADEA. Plaintiff alleges that she was subjected to repeated comments about her gender and her age from two different supervisors, and further alleges that one supervisor sexually harassed her by grabbing himself in the groin in Plaintiff's plain view. Plaintiff alleges that she was targeted because she was an older woman. (Compl. at ECF 6, 8). While such allegations may not necessarily rise to the level of a *prima facie* case of hostile work environment, they suffice to give Defendant fair notice of Plaintiff's claim. *See Kassner*, 496 F.3d at 240–41 (finding plaintiff's allegations as to a hostile work environment sufficient under *Swierkiewicz*, where plaintiff alleged that her manager and other managers "repeatedly made degrading comments" regarding plaintiff's age).

Defendant argues that the allegations in Plaintiff's Complaint regarding Morales stating that "women [are] only good for one thing" and that he was "donating" older women to another department amounted to nothing more than stray remarks that are not probative of discrimination. (Def. Memo at ECF 15). Defendant also argues that Schwendemann's remarks that plaintiff could not keep up with the other female employees and asking when she would

retire are not probative of age discrimination. (*Id*.). While these remarks may not be probative of age or gender discrimination when viewed in isolation, they are sufficient to provide Defendant with fair notice of a hostile work environment claim when viewed together and alongside Plaintiff's allegations regarding Schwendemann's sexual gestures. *See Patane*, 508 F.3d at 113 ("'a work environment's hostility should be assessed based on the totality of the circumstances'") (citing *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 23 (1993)). These allegations plead facts sufficient to support the conclusion that Plaintiff faced harassment in the workplace "of such quality . . . that a reasonable employee would find the conditions of her employment altered for the worse[.]" *Id*. (citing *Terry*, 336 F.3d at 148)).

The Court thus finds that Plaintiff is entitled to proceed on her hostile work environment claims. Whether she can plausibly establish a *prima facie* case of discrimination based on a hostile work environment is a question better addressed at the summary judgment stage.

### 5. Retaliation

Defendant argues that Plaintiff's claims for retaliation under Title VII and the ADEA must be dismissed for failure to establish a *prima facie* case of retaliation. (Def. Memo at ECF 11; Def. Reply at ECF 17–18). Defendant again ignores the lowered pleading standard applicable to employment discrimination claims at the motion to dismiss stage. The Court finds that Plaintiff has provided Defendant with fair notice of her retaliation claims.

Under Title VII, an employer may not discriminate against an employee in retaliation for an employee's complaints regarding unlawful practices under Title VII. 42 U.S.C. § 2000e–3(a). "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection

between the protected activity and the adverse employment action. . . . the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'" *Littlejohn,* 2015 WL 4604250, at *11 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *see also Patane*, 508 F.3d at 115.

The ADEA also prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to or complaints regarding any practice made unlawful under the ADEA. 29 U.S.C. § 623(d); *see also Kassner*, 496 F.3d at 241 (citing 29 U.S.C. § 623(d)). "[T]o state a claim for retaliation under the ADEA, [the plaintiff] must allege (1) participation in a protected activity; (2) that the defendant[s] knew of the protected activity; (3) adverse employment action; and (4) a causal connection between [her] protected activity and the adverse employment action." *Pocino v. Culkin*, No. 09 CV 3447, 2010 WL 3516219, at *2 (E.D.N.Y. Aug. 31, 2010) (citations and internal quotations omitted). As with Plaintiff's Title VII retaliation claim, Plaintiff's ADEA retaliation claim may survive a motion to dismiss without establishing a *prima facie* case. *Kassner*, 496 F.3d at 238.

With respect to the plaintiff's engagement in a protected activity and the defendant's knowledge thereof, both Title VII and the ADEA protect employees who make informal protests of discrimination, including complaints to management. *See Littlejohn*, 2015 WL 4604250 at *13 (noting informal protests of discriminatory employment practices, including complaints to management, are protected activities under Title VII); *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (noting plaintiff's complaints to management regarding the sexual harassment of a female customer and a co-worker's racial remarks); *Kassner*, 496 F.3d at 241–42 (noting plaintiffs' complaints to defendants regarding their disparate treatment in

comparison to younger employees). The employee's complaints must make clear to the employer that the employee believes she is being discriminated against on the basis of a protected trait. *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (finding plaintiff "made no complaints that suggested a belief that she was being discriminated against of any trait, protected or otherwise"). Courts in the Second Circuit have taken a "generous" view of retaliatory acts at the motion to dismiss stage. *See id.* (noting "it is appropriate to construe Title VII's prohibition on retaliation generously"). Thus, "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination' may constitute retaliation." *La Grande*, 370 F. App'x at 212 (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The Second Circuit has stated, with respect to retaliation claims, that "[o]nly a statement of facts so conclusory it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." *Patane*, 508 F.3d at 115 (finding plaintiff's Title VII retaliation claim sufficient to survive defendant's motion to dismiss).

Here, Plaintiff alleges that she complained to both Schwendemann and her union representative about Schwendemann's allegedly discriminatory and harassing conduct. (Compl. at ECF 5–6). By alleging that she complained to her supervisor, Plaintiff has plausibly alleged that Defendant HHC had notice of her complaint. Plaintiff further alleges that when Schwendemann learned of her complaint to the union, he yelled at her, docked her pay for being only a few minutes late, tapped her phone to listen to her conversations, moved her office furniture upon her return from vacation, and threatened disciplinary action against her if her phone etiquette "was not to his liking." (*Id*. at ECF 7). Such actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *La Grande*, 370 F.

App'x at 212, and therefore Plaintiff's allegations serve to give Defendant fair notice of Plaintiff's retaliation claims. The Court will allow Plaintiff's retaliation claims under Title VII and the ADEA will therefore proceed. *See La Grande*, 370 F. App'x at 212 (finding plaintiff sufficiently alleged a retaliation claim where, after his complaints to management, he was threatened with termination and given a higher work load); *Kassner*, 496 F.3d at 242 (finding one plaintiff had plausibly alleged an ADEA retaliation claim based on alleged changes to her work station and schedule following her complaints to management).

6.     Constructive Discharge

Defendant argues that Plaintiff's Title VII and ADEA claims for constructive discharge must be dismissed because the Complaint fails to allege "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Pennsylvania State Police v. Suders* ("*Suders*"), 542 U.S. 129, 149 (2004)). As with Plaintiff's hostile work environment and retaliation claims, the Court finds that Plaintiff's Complaint provides fair notice of her constructive discharge claims and therefore may proceed.

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (quoting *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)). The Second Circuit has found two components of this standard: "the employer's intentional conduct" against the plaintiff and "the intolerable level" of the plaintiff's work conditions. *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). If a "reasonable person *subjected to the same conditions as the plaintiff* would have felt compelled to step down," a claim for constructive

discharge may proceed. *See Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) (emphasis in original). The Court views Plaintiff's allegations regarding her working conditions on a cumulative basis. *Id.* (finding error in the district court's treatment of the various conditions set forth by plaintiff "as separate and distinct rather than additive"); *see also Timothy v. Our Lady of Mercy Medical Center*, No. 03 CV 3556, 2004 WL 503760, at *7 (S.D.N.Y. Mar. 12, 2004) (finding plaintiff's aggregated allegations sufficient to withstand a motion to dismiss where plaintiff alleged that she was passed over positions for which she was qualified and defendants "generally engaged in actions that made it more difficult for her to work").

Plaintiff's hostile work environment claim provides the "necessary predicate" to her constructive discharge claim. *See Suders*, 542 U.S. at 149 ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case."). In addition, Plaintiff has alleged that she faced the following work conditions prior to her resignation: her supervisor's reading of her medical records, the "tapping" of her work phone, movement of her office belongings and furniture upon her return from vacation so as to imply that Plaintiff was being punished, her supervisor yelling at Plaintiff "for no apparent reason," and her supervisor humiliating Plaintiff by making "derogatory and insulting comments in front of the other office staff." (Compl. at ECF 7–8).[15] These allegations plausibly allege that Plaintiff faced "working conditions so intolerable" that she was compelled to resign, *Fincher,* 604 F.3d at

---

[15] Plaintiff's opposition alleges that after her complaints to Schwendemann and her union representative, she was demoted from her position and her duties were changed. (Pl. Opp. at ECF 20–21). In making this argument, Plaintiff relies on the transcript from her 50-h hearing, which the Court has found inappropriate to consider at this stage of the proceedings. *See* Section II, *supra*. The Complaint does not allege that Plaintiff experienced a demotion or a change in her job duties, and so the Court does not consider these allegations at this time.

725, and are sufficient to put Defendant on notice of her constructive discharge claims. Accordingly, Plaintiff's constructive discharge claims will proceed.[16]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Defendants Elmhurst Hospital and the City of New York are dismissed from the action.  Count One of Plaintiff's Complaint is dismissed for failure to state a claim. Plaintiff's remaining claims for hostile work environment, retaliation, constructive discharge and *respondeat superior* liability shall proceed.  The Court respectfully directs the Clerk of the Court to amend the caption of this case by removing the City of New York and Elmhurst Hospital as defendants, and by replacing "Health and Hospital Corp." with "The New York City Health and Hospital Corporation."

SO ORDERED:

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: September 8, 2015
       Brooklyn, New York

---

[16]    The Court notes that the Complaint also alleges that her supervisor behaved in such a way that "made it very difficult for everyone to work, not only the women to whom his behavior was usually directed."  (Compl. at ECF 6).  For this reason, the Court cannot find that Plaintiff's Complaint has stated a *prima facie* case for constructive discharge, as this allegation brings into question whether Plaintiff was specifically targeted for termination because of her age or gender. *Cf. Russo v. New York Presbyterian Hosp*., 972 F. Supp. 2d 429, 448–49 (E.D.N.Y. 2013) (finding plaintiff, a nurse, failed to demonstrate on summary judgment that the surgeon targeted her due to her gender where the surgeon generally cursed at the entire operating room staff and made derogatory comments toward male staff members).  However, viewing the Complaint as a whole and in the light most favorable to Plaintiff, the Court finds that, at this stage, Plaintiff has plausibly alleged that she was constructively discharged due to her age and gender. *See Vega*, 2015 WL 5127519, at *1 (affirming principle that "a Title VII plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss").